J. MEYER AND COMPANY, INC., *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellee.

Second District    No. 79-241

Opinion filed September 4, 1980.

54

Jack F. Clifford and Harvey Paulsen, both of Jack F. Clifford & Associates, of Chicago, for appellants.

Ellis E. Fuqua and Bernard Wysocki, both of Fuqua, Winter & Associates, of Waukegan, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiffs, J. Meyer and Company, Inc., and Illinois Briar Pipe and Sundry Company, Inc., appeal from orders of the Circuit Court of Lake County which dismissed their amended complaint against defendant Illinois Bell Telephone Company for failure to state a cause of action and denied leave to file a second amended complaint.

Plaintiffs are owners of a warehouse which was burglarized on May 22 or 23, 1976, after they had an alarm system installed on the premises for protection of the warehouse. The alarm system was designed to transmit alarm signals from the warehouse to the local police department over defendant's telephone wires and was connected to defendant's equipment in a junction box located on a telephone pole near the warehouse. The unknown burglars circumvented the alarm system by disconnecting the alarm wires to the junction box and then proceeded with the theft of plaintiffs' property from the warehouse. Plaintiffs seek the recovery of $500,000 from Illinois Bell for damages sustained as a result of the theft.

Plaintiffs' original complaint was voluntarily dismissed. Their amended complaint alleged in count I that Illinois Bell was negligent in placing an unlocked junction box in an easily accessible location and in using identifiable alarm system wires which were distinct in color and voltage from all other wires in the junction box. Count II alleged wilful and wanton misconduct in that Illinois Bell allegedly failed to allow burglar alarm specialists "access to the telephone equipment so as to insure the maintenance of the integrity of the burglar alarm system," and in that it allegedly knew of similar burglaries in other areas wherein the same *modus operandi* was employed. Count III alleged breach of contract by defendant.

The amended complaint was dismissed by the trial court for its fail-

ure to state a cause of action. The primary issue on this appeal is whether the defendant utility owed a duty to plaintiffs under the circumstances as alleged in the complaint. Defendant contends that any such duty must be based on "an official tariff rule, regulation, order or decision on file with the Illinois Commerce Commission" and that none of the provisions of the tariff filed with the Commission, pursuant to section 33 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 33) gives plaintiffs the cause of action sought in their complaint.

■■ It has been established that the source of any duty of Illinois Bell, as a public utility, to its subscribers is only in the tariff as filed. (*Sarelas v. Illinois Bell Telephone Co.* (1963), 42 Ill. App. 2d 372, 192 N.E.2d 451; and see *Illinois Bell Telephone Co. v. Miner* (1956), 11 Ill. App. 2d 44, 136 N.E.2d 1.) Having examined the relevant tariff provisions in effect at the time of the installation of the alarm system, we find that they do not establish any duty of care owed by defendant to plaintiffs which could have been breached under the circumstances of this case.

■■ The portion of the tariff describing Illinois Bell's duty in regard to customer-provided systems, as was plaintiffs' alarm system here, states in part:

"The facilities of the Company are not represented as adapted to the use of customer-provided equipment and systems, and where such equipment or system is connected to Company facilities the responsibility of the Company shall be limited to the furnishing of facilities suitable for exchange telecommunications service or telecommunications channel service and to the maintenance and operation of such facilities in a manner proper for the service furnished; subject to this responsibility the Company shall not be responsible for (1) the through transmission of signals generated by the customer-provided equipment or system, or for the quality of, or defects in, such transmission * * *." (Illinois Bell Telephone Company Tariff, Illinois Commerce Commission No. 5, pt. 1, §10, par. 2.1.A.)

We agree with defendant that the plain language of this provision exculpates it from liability whether the non-functioning of the customer-provided burglar alarm system in this case is characterized as the result of a defect in signal transmission or, as plaintiffs prefer to describe it, defective installation.

■■ The second amended complaint plaintiffs sought to file alleged, however, that Illinois Bell breached the following tariff provision:

"The Company is not liable for any defacement of or damage to the premises or property of a customer resulting from the existence of facilities furnished by the Company on the premises, or the installation or removal of such facilities, unless such defacement or damage

is the result of the negligence of the Company." (Illinois Bell Telephone Company Tariff, Illinois Commerce Commission No. 5, pt. 1, §5, par. 3.3.)

Construing the foregoing paragraph according to the ordinary meaning of its words (*First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 361 N.E.2d 832), we find it does not assist plaintiffs. It would be incongruous were this paragraph considered to impose liability where paragraph 2.1.A of the tariff clearly exculpates Illinois Bell from liability for the same conduct. Paragraph 3.3, at most, imposes liability upon Illinois Bell if the premises or property of a customer are negligently defaced or damaged by facilities of Illinois Bell which are situated on the customer's premises. It does not purport to impose liability for the failure of a signal to be transmitted through the defendant's system as urged by plaintiffs. The burglar alarm system in this case was furnished by plaintiffs, not Illinois Bell; and plaintiffs do not allege that the existence or installation of the junction box or telephone pole to which it was attached, both furnished by Illinois Bell, was either on plaintiffs' premises or caused damage to their property.

■■ The proposed second amended complaint in this case further alleged Illinois Bell violated the following provision of section 32 of the Public Utilities Act:

"Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just and reasonable." (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 32.)

Without citation of authority plaintiffs assert simply that this section "demands that Illinois Bell furnish services which promote the safety of its patrons." To the contrary, a review of the relevant decisions discloses that section 32 does not require that a public utility render particular types of primary services. See, *e.g., City of Chicago v. Illinois Commerce Com.* (1980), 79 Ill. 2d 213, 402 N.E.2d 595; *Brotherhood of Railroad Trainmen v. Elgin, Joliet & Eastern Ry. Co.* (1943), 382 Ill. 55, 46 N.E.2d 932; *Dunn v. Chicago, Rock Island & Pacific Ry. Co.* (1928), 248 Ill. App. 26.

■■ As the tariff is the sole source of any duty owed by defendant to plaintiffs and plaintiffs have failed to establish a duty which may be the basis for a cause of action in this case premised upon negligence or wilful and wanton misconduct, we find their amended complaint was properly dismissed and that the trial court correctly declined to allow the proposed amendments.

Plaintiffs alternatively contend that paragraphs 3.1 and 2.1.A of the tariff constitute special legislation contrary to article 4, section 13 of the

Illinois Constitution. They assert there is no reasonable basis for the difference in treatment of private corporations and public utilities as reflected in the tariff's limitation on Illinois Bell's liability to its customers. It has been held, generally, that a statute is not invalid as special legislation unless the legislative action is clearly unreasonable and there is no legitimate reason for the statute which would not require with equal force its extension to others whom it leaves untouched. *People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 120 N.E.2d 35.

■■ We find there is a reasonable basis for treating this public utility differently from private corporations and for limiting its liability to subscribers in the rendering of its service. Section 32 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 32) requires that all rates or other charges by a public utility "for any service rendered or to be rendered shall be just and reasonable" and they are fixed by a State agency. Without the limitations on liability set forth by the tariff, defendant would be uniquely vulnerable to claims based on signal transmission defects which may result from a variety of causes, adversely affecting its ability to fulfill the public need for reasonable telephone service charges. This would be particularly true of defects in the transmission of signals originating from customer-provided equipment over which the company could have little control. As was reiterated by the California Supreme Court in *Waters v. Pacific Telephone Co.* (1974), 12 Cal. 3d 1, 7, 114 Cal. Rptr. 753, 756, 523 P.2d 1161, 1164:

> " 'The theory underlying these decisions [upholding the right of regulated utilities to limit their liability] is that a public utility, being strictly regulated in all operations with considerable curtailment of its rights and privileges, shall likewise be regulated and limited as to its liabilities. In consideration of its being peculiarly the subject of state control, "its liability is and should be defined and limited." [Citation.] There is nothing harsh or inequitable in upholding such a limitation of liability when it is thus considered that the rates as fixed by the commission are established with the rule of limitation in mind. Reasonable rates are in part dependent upon such a rule.' [*Cole v. Pacific Telephone & Telegraph Co.* (1952), 112 Cal. App. 2d 416, 419, 246 P.2d 686, 688.]"

We agree with that reasoning (see also *Western Union Telegraph Co. v. Esteve Brothers & Co.* (1921), 256 U.S. 566, 65 L. Ed. 1094, 41 S. Ct. 584; *Southern Bell Telephone & Telegraph Co. v. Invenchek, Inc.* (1974), 130 Ga. App. 798, 204 S.E.2d 457; *Correll v. Ohio Bell Telephone Co.* (1939), 63 Ohio App. 491, 27 N.E.2d 173), and do not find the limitations of Illinois Bell's liability by the tariff to be constitutionally impermissible.

Plaintiffs also contend their amended complaint states a cause of action for breach of contract as it alleged the existence of an agreement

between the parties for consideration to be paid by plaintiffs in exchange for services to be rendered by Illinois Bell in the transmission of burglar alarm signals; and that defendant failed to perform. Illinois Bell argues the complaint was in this respect conclusionary and lacking in essential factual allegations.

■■ It is well settled that to establish the existence of a contract a pleader must allege facts sufficient to indicate offer, acceptance, and consideration. (*Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101; *Barnes v. Peoples Gas Light & Coke Co.* (1968), 103 Ill. App. 2d 425, 243 N.E.2d 855.) It has also been recognized that there often exists no clear distinction between statements of "evidentiary facts," "ultimate facts" and "conclusions of law." (See, *e.g., Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 475, 244 N.E.2d 809, 813.) We agree with the trial court, however, that the breach of contract count in plaintiffs' amended complaint lacked sufficiently specific allegations of supporting fact; *e.g.*, it failed to state whether the alleged contract was oral or written or any of the circumstances of offer and acceptance disclosing its terms. (See *Pollack v. Marathon Oil Co.*; see also *Hemingway v. Skinner Engineering Co.* (1969), 117 Ill. App. 2d 452, 254 N.E.2d 133.) As the proposed second amended complaint did not cure this defect, the trial court's order denying leave to file the second amended complaint was not an abuse of its discretion. *Kittay v. Allstate Insurance Co.* (1979), 78 Ill. App. 3d 335, 397 N.E.2d 200; *Village of Gulfport v. Buettner* (1969), 114 Ill. App. 2d 1, 251 N.E.2d 905.

For the foregoing reasons we conclude the trial court correctly dismissed plaintiffs' amended complaint and denied leave to file their proposed second amended complaint. The judgment of the Circuit Court of Lake County is therefore affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.