DONALD MOUNCE *et al.*, Plaintiffs-Appellees, v. TRI-STATE MOTOR TRANSIT COMPANY, INC., *et al.*, Defendants (The Department of Transportation *et al.*, Intervenors-Appellants).

Third District   Nos. 3—85—0798, 3—85—0799 cons.

Opinion filed December 12, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Gabriel M. Rodriguez, Assistant Attorney General, of Chicago, of counsel), for appellants.

Louis E. Olivero, of Peru, and Keith Roberts, of Donovan & Roberts, P.C., of Wheaton (David Olivero, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiffs, Donald Mounce and Leo Zurinski, employees of the Department of Transportation (DOT), filed suit against defendants, Tri-State Motor Transit Company, Inc., and Morris E. Strickland, for injuries sustained in an automobile accident. Shortly after commencement of the suit, the parties negotiated a settlement. The parties petitioned the circuit court of La Salle County for approval of disbursement of the proceeds of the settlement via a structured settlement. DOT and the State Employees' Retirement System of Illinois (SERSI) intervened to protect their statutory liens on amounts paid or to be paid under section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b)) and the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 14—129). DOT and SERSI (the intervenors) appeal from the judgment of the circuit court adjudicating their liens and subrogation rights and ordering disbursement of the funds of the settlement on a *pro rata* basis.

By the terms of the settlement, defendants agreed to pay $13,500 to Mounce in settlement of his claim. Defendants also agreed to pay Zurinski $150,000 in total settlement of his claim—$50,000 on the date of settlement and $100,000 in a 10-year structured settlement. The intervenors were granted leave to intervene to protect their stat-

utory liens and plaintiffs filed a petition to adjudicate lien. At the time of the hearing on the petition, DOT had paid Zurinski $45,742.28 pursuant to an order of the Industrial Commission (the Commission) and SERSI had paid $14,089.03 in occupational disability benefits. SERSI is continuing to make monthly occupational disability payments to Zurinski of $1,356 offset by the Workers' Compensation benefits. There is also the possibility of future medical payments to be disbursed by DOT. DOT does not appeal the settlement amount as to Mounce but does request that the trial court judgment be remanded for computation of costs upon verification by Mounce's attorney. Prior to the hearing, Zurinski had filed a petition with the Commission seeking an increase in his benefits. At oral argument, this court was informed the petition has been withdrawn, and, therefore, there is no need for further consideration on the issue as to whether disbursement should be delayed until the time of such determination.

The structured settlement purported to disperse the settlement funds in the following amounts:

(A) The first $50,000:

Prorated portion of DOT lien . . . . . . . . . . . . . . . .$11,151.41
Prorated portion of attorney fees . . . . . . . . . . . .$16,667.67
Reimbursement of costs & expenses . . . . . . . . . .$2,956.13
Prorated portion of SERSI lien . . . . . . . . . . . . . .$4,368.37
Deposit to trust account . . . . . . . . . . . . . . . . . . . .$14,856.42

(B) The remaining $100,000 in a 10-year structured settlement in payments of $833.33 for 120 months:

Prorated portion of DOT lien. . . . . . . . . . . . . . . . .$185.86
Prorated portion of attorney fees . . . . . . . . . . . . . .$277.78
Prorated portion of SERSI lien. . . . . . . . . . . . . . . .$72.81
Deposit to trust account. . . . . . . . . . . . . . . . . . . . .$296.88*
*Trust payment for the 120th month is $297.28.

The structured settlement, upon completion, would reimburse the intervenors for amounts that have been paid. The trust-account device employed purports to establish a fund by which amounts to be paid by the intervenors would be reimbursed at such times and in such amounts as these benefits are paid to Zurinski. The trust is to terminate once occupational disability payments to Zurinski cease. Upon termination of the trust, any accumulated amounts expended by the intervenors would be reimbursed from the corpus and accrued interest and any remaining amounts would be disbursed to Zurinski.

On December 19, 1985, the circuit court entered its judgment providing for the disbursement of the settlement funds. The order provided for net repayments to the intervenors for the amounts ex-

pended minus a statutory 25% attorney fee. Disbursement of the proceeds was to be accomplished via the structured settlement which Mounce, Zurinski, and the defendants had agreed upon. On December 20, the intervenors filed their notice to appeal.

■ The first issue raised by plaintiffs deals with this court's authority to hear the appeal. Plaintiffs contend that the intervenors' notice to appeal filed on December 20, 1985, was rendered a nullity and did not confer jurisdiction upon this court by the subsequent and timely filing of plaintiffs' post-trial motion. The filing of a notice to appeal does not divest the circuit court of jurisdiction to hear an opposing party's post-trial motion. (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 442 N.E.2d 163.) Supreme Court Rule 303 (87 Ill. 2d R. 303), states that a new notice to appeal must be filed within the prescribed time limit from the entry of the order disposing of the post-trial motion. This presupposes, however, that there has been a valid disposition of the post-trial motion. It is possible for the movant to abandon his post-trial motion, and this can be accomplished by filing a notice to appeal. (See *Corwin v. Rheims* (1945), 390 Ill. 205, 61 N.E.2d 40.) In that event, "the judgment or decree becomes final on the date it was entered and the time within which a notice of appeal must be filed begins to run from that date." *Corwin v. Rheims* (1945), 390 Ill. 205, 216, 61 N.E.2d 40, 46.

■ In this case, plaintiffs' filing of a cross-appeal (1) constituted an abandonment of the post-trial motion, (2) recognized the existence of the intervenors' appeal as pending and viable, and (3) effectively removed the cause of action from the circuit court, leaving it with no authority to hear or dispose of the post-trial motion. Therefore, all events relate back to the original judgment entered on December 19, 1985, and, on that basis, the intervenors' notice to appeal was timely and conferred jurisdiction upon this court.

■■ Turning to the merits of the case, the sole issue regarding the Mounce settlement is whether, absent a statement of plaintiff's costs, the order to disburse funds to Mounce was premature. The general rule is that if costs are to be awarded from a disbursement, then the party to receive the costs must specify the amounts expended and the purpose for the expenditure. (See *First National Bank v. Barclay* (1982), 111 Ill. App. 3d 162, 442 N.E.2d 780.) Absent a party's presentation of evidence, there is no basis to award such costs. (*Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 440 N.E.2d 194.) In workers' compensation cases, a statement of costs is statutorily required since the employer is required to pay a *pro rata* share of the costs in connection with the third-party claim.

(*Lewis v. Riverside Hospital* (1983), 116 Ill. App. 3d 845, 452 N.E.2d 611.) Accordingly, the case is remanded on this issue for further proceedings to determine what costs, if properly documented and supported by the evidence, will be awarded.

The Zurinski settlement raises two different issues. First, there remains a question as to whether the 10-year structured settlement, entered into without the consent of the intervenors, adequately protects the statutory lien imposed on any settlement for the benefit of the intervenors. And second, intervenors claim that an allegedly excessive attorney fee jeopardizes their liens.

■ Our first inquiry is whether the 10-year structured settlement, entered into without the consent of the intervenors, adequately protects the intervenors' liens as imposed under section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b)) and section 14—129 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 14—129). The purpose of these sections is to provide protection for the nonnegligent intervenors since they had nothing to do with the accident, and the intervenors will be entitled to reimbursement so far as the settlement fund will allow. (*Continental Casualty Co. v. Sweda* (1969), 113 Ill. App. 2d 423, 251 N.E.2d 65.) However, neither party has been able to cite, nor has this court found, any workers' compensation cases dealing with the use of structured settlements as a means of reimbursing an employer for amounts paid through the use of a structured settlement.

Section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b)) provides that the duty of protecting the employer's lien lies with the court. The very point of the employer's intervention in the third-party proceedings is so that all orders of the court are made for his protection. Additionally, where a settlement between the employee and the third party is reached, the statute requires either the employer's consent or an order of court protecting the employer. There is no question that what is protected is the employer's right to reimbursement. (*Freer v. Hysan Corp.* (1985), 108 Ill. 2d 421, 484 N.E.2d 1076.) An order of the court which does not consider prompt recognition and immediate repayment of amounts already paid by the intervenors does not protect them.

In this case, where the employee and third party attempt to reimburse the intervenors for amounts paid over a 10-year period on a *pro rata* basis as part of a structured settlement, the failure to immediately reimburse will only be permitted if the intervenors consent to the terms of the agreement. It must be noted that, even if carried for the full term of the structured settlement, full reimbursement would

not be accomplished when the sums ultimately realized are discounted to their present value. Our analysis leads to the conclusion that the structured settlement does not adequately protect the intervenors' liens.

■ The final issue we address today relates to the alleged excessive attorney fees. Section 5(b) specifically states that "in the absence of [some] other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b).) This statutory directive is totally separate and distinct from any fee arrangement entered into between the plaintiffs and plaintiffs' attorney. The statutory language "in the absence of other agreement" refers to any agreement between the employer and the employee or his attorney. (*Kimpling v. Canty* (1973), 13 Ill. App. 3d 919, 300 N.E.2d 839.) Absent such an agreement, the statute requires that the employer pay 25% of the gross amount of the reimbursement.

In this case, there was no such agreement between the intervenors and Mounce, Zurinski, or their attorney. Therefore, the only basis upon which Mounce and Zurinski's attorney can recover attorney fees is section 5(b) of the Worker's Compensation Act, and that statute specifically provides for an attorney fee of 25% of the gross amount of the settlement. (*Lewis v. Riverside Hospital* (1983), 116 Ill. App. 3d 845, 452 N.E.2d 611.) If this does not satisfy the amount owed the attorney under the attorney-client agreement, then the attorney must seek any additional amounts from the client. The employer can not be expected to pay more than the statutorily required amount. We recognize that the initial computations accounted for a 25% attorney fee out of the initial reimbursement figures. We also note, however, that one-third of the initial $50,000 plus one-third of each deferred payment goes towards attorney fees without regard as to whether any amounts will actually be disbursed to Zurinski, the only proper source for any fees over the statutorily required 25%. Because future payments by the intervenors are contemplated, under certain conditions the employee may not receive any funds under the structured settlement. If this situation arises, then any attorney fee over the statutory 25% would impair the intervenors' liens.

For the foregoing reasons, this case is reversed and remanded to restructure the settlement accordingly.

Reversed and remanded.

SCOTT, P.J., and HEIPLE, J., concur.